Case No.: 24-5988

# In the United States Court of Appeals for the Sixth Circuit

**ASHLEY GRAYSON,**
**DEFENDANT – APPELLANT,**

**-V.-**

**UNITED STATES OF AMERICA,**
**PLAINTIFF – APPELLEE.**

Direct Appeal from the United States District Court for the Western District of Tennessee, Western Division, No. 2:23-CR-20121, the Honorable Jon P. McCalla (recused after trial), the Honorable Thomas L. Parker (sentencing); on remand from the Supreme Court of the United States, No. 25-851.

# Appellant's Supplemental Brief on Remand

**Niles Illich**
Illich & Shin, PLLC
8330 Lyndon B. Johnson Freeway
Suite 755
Dallas, Texas 75243
Direct: 469.886.1564
Email: Niles@appealstx.com

**Scott H. Palmer**
Palmer Perlstein
15455 Dallas Parkway
Suite 540
Addison, Texas 75001
Phone: 214-987-4100
Scott@palmerperlstein.com

**Counsel for Appellant**

The government conceded error in its reliance on *Murdock,* and the government cannot show the error in denying Appellant's motion to suppress was harmless; reversal and remand are required.

**Issue One**:

The government conceded error in its reliance on *Murdock*.

## I. The Solicitor General's position forecloses continued reliance on *Murdock*.

The Solicitor General argued this Court erred in relying on *Murdock*;[1] the Solicitor General has thus conceded error in continued reliance on *Murdock*.[2]

## II. If the Court finds the government has conceded error in its reliance on *Murdock*, then the Court should apply the exclusion from 18 U.S.C. § 2511/2515.

The panel previously explained the structure of the exclusionary provision in §§ 2511/2515.[3] As explained below, §§ 2511/2515 apply because: 1) Johnson and Appellant had an "electronic communication;"[4] 2) Johnson used her husband's phone to "intercept" the "electronic communication;"[5] and, 3) Johnson used the recording to extort Appellant.[6]

### A. Appellant and Johnson had an "electronic communication."

---

[1] S.G. Brief, 9-10.
[2] S.G. Brief, 13.
[3] *United States v. Grayson*, No. 24-5988, 2025 WL 2366262, at *5 (6th Cir. Aug. 14, 2025), cert. granted, judgment vacated, 146 S. Ct. 1872 (2026).
[4] Transcript, R. 145, Page ID#1253.
[5] Transcript, R. 145, Page ID#1253.
[6] Transcript, R. 145, Page ID#1253.

The statutory definition for "electronic communication" is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce. . ."[7] There can be no meaningful dispute that Johnson and Appellant communicated "sounds" and "images" with a "photoelectronic or photooptical system" when they communicated over FaceTime.[8] Thus, Johnson and Appellant had an "electronic communication."

**B. The "electronic communication" was "intercepted."**

Equally, there is no question Johnson used a phone to "intercept" the electronic communication. Section 2510(4) defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."[9] This Court wrote, ". . . Johnson [] us[ed] Thomas's phone to secretly record the call."[10] Thus, Johnson "intercepted" the "electronic communication."

**C. Johnson used the "intercepted" "electronic communication" for a criminal purpose.**

Section 2511(2)(d) allows a party to an "electronic communication" to record

---

[7] 18 U.S.C. § 2510(12). The definitions include exceptions, but the exceptions do not apply here.
[8] *Grayson*, 2025 WL 2366262, at *2; Transcript, R. 145, Page ID#1253.
[9] 18 U.S.C. § 2510(4).
[10] *Grayson*, 2025 WL 2366262, at *2.

it without violating § 2515.[11] But that exception does not apply if the communication is "intercepted" "for the purpose of committing any criminal act. . ."[12]

During oral argument, the panel asked the government a question that included the statement, "it seems to me [Johnson] created the record for extortion, right, that was the understanding of why she was creating [the video]."[13]

The criminal act was either: extortion (forcing Appellant to remove her name from the deed or to pay money) or theft (agreeing to go through with an act as a pretext to take money from Appellant).

The Solicitor General relied on *Traficant* to claim the burden is on Appellant to demonstrate the interception "was made for *an* impermissible purpose."[14] The Solicitor General's reliance on *Traficant* is important because it only requires Appellant to show Johnson made the interception for "*an* improper purpose."[15] To show "*an* improper purpose" Appellant relies on:

- the ROI where Johnson told federal agents she made the recording "to obtain funds" from the Graysons;[16]
- text messages in a "group chat" where Johnson boasted that she would use the video to get money from the Graysons;[17]

---

[11] 18 U.S.C. § 2511(2)(d).
[12] *Id*.
[13] Oral argument recording 0:19:43-0:20:28.
[14] S.G., brief, 15 ("Petitioner, as the party seeking suppression, would bear the burden of proving that the recording was made for *an* improper purpose.") (emphasis added).
[15] *Traficant v. Comm'r*, 884 F.2d 258, 266 (6th Cir. 1989) ("A party attempting to suppress a recording bears the burden of proving that it was made for an impermissible purpose.")).
[16] Evidence, R. 63-2, Page ID #181.
[17] Evidence, R. 62-3, Page ID #182-184.

- testimony that Johnson intended to compel Appellant to remove her name from the deed;[18] and,

- Johnson's testimony that the hoped-for sale to TMZ was an afterthought.[19]

**1. ROI statement. Johnson made the video to "get funds" from Appellant.**

In her statement to federal agents, Johnson said she and Thomas "decided not to commit the murders but would instead attempt to obtain funds from [the Graysons]."[20]

In its responsive brief in the district court, the government acknowledged that Johnson and Thomas made the video because they "hoped to use this [video] to get money from the Graysons."[21]

This evidence shows Johnson made the recording either to extort the Graysons or to steal from them (by pretending to go along with a plot and taking money for it but never intending to do the act). In either instance, Johnson's statements to federal agents (adopted by the government) demonstrate that § 2511(2)(d) applies.

**2. Group chat messages show Johnson made the video to extort Appellant.**

---

[18] Transcript, R. 145, Page ID #1253.
[19] Transcript, R.145, Page ID #1456 ("All right. And then on the end of all of that, in addition to getting money out of Ashley, once she gave you money, maybe turn around and sell that video to, what was it, TMZ? A. Yeah. Whoever.").
[20] Evidence, R. 63-2, Page ID #181.
[21] Response, R. 732, Page ID #209; 211. The government then argued Johnson had "several other reasons" for making the video.

In support of her motion to suppress, Appellant produced a transcript of a "group chat" in which Johnson participated; this transcript demonstrated Johnson intercepted the call to extort Appellant.[22] The text messages showed Johnson boasting, ". . . I'm finna gone and get us rich watch this."[23] The text messages showed other people suggesting Johnson request $75,000 "up front."[24]

3. **Trial testimony. Johnson testified she made the video to extort Appellant.**

Johnson testified she "intercepted" the "electronic communication" in part to compel Appellant to "take her name off the house."[25] Johnson's testimony establishes that her hoped-for sale to TMZ was at best a secondary motivation and not the purpose for the interception of the "electronic communication."[26]

4. **Appellant carried her burden.**

    a. The government relied on *Traficant*, and Appellant meets her burden.

Section 2511(2)(d) excludes evidence intercepted "for the purpose of committing any [state or federal] criminal . . . act."[27]

Appellant's evidence demonstrates Johnson "intercepted" the "electronic

[22] Evidence, R. 63-2; 62-3, Page ID #181-184.
[23] Evidence, R. 63-3, Page ID #184. At trial Johnson testified this statement was made in the context of selling the video to TMZ, but the entire chat undermines that claim. Transcript, R.145, Page ID #1461.
[24] Evidence, R. 63-3, Page ID #184.
[25] Transcript, R. 145, Page ID#1253; *Grayson*, 2025 WL 2366262, at *2 (". . . or use it as leverage to get Grayson to sign over the deed to the home.").
[26] Transcript, R.145, Page ID #1456.
[27] 18 U.S.C. § 2511(2)(d).

communication" for the purpose of committing a criminal act (either extortion or theft). The Solicitor General relied on *Traficant* from this Court, which only requires a showing of "*an* illegal purpose."[28]

An argument exists that § 2511(2)(d) does not apply because Johnson had more than one motivation for making the video.[29] This approach conflicts with *Traficant* and is inconsistent with the record.[30]

Other than *Traficant*, Appellant does not believe this Court has interpreted § 2511(2)(d).[31] That said, a district court in Michigan held § 2511(2)(d) requires a showing of the "primary purpose" of the interception.[32] But whether Appellant had to show "the purpose" for the interception, "*an* impermissible purpose," or Johnson's "primary purpose," the result is the same—Appellant carried her burden to apply § 2511(2)(d).

Even if the Court reads "the purpose" in § 2511(2)(d) to require a singular purpose, the purpose here was criminal theft/extortion; subsequent motives cannot sanitize Johnson's "interception." However the Court reads § 2511(2)(d), the evidence establishes that Johnson's reason for the interception (and thus the "primary purpose" and "*an* impermissible purpose") was to extort or steal from

---

[28] *Traficant*, 884 F.2d at 266 (emphasis added).
[29] S.G. brief, 15.
[30] *Traficant*, 884 F.2d at 266 (emphasis added).
[31] *See Martinez v. Mentavi, Inc.*, No. 1:25-CV-228, 2025 WL 3780427, at *2-*3 (W.D. Mich. Oct. 9, 2025).
[32] *Id*.

Appellant.

b. Counter-arguments fail.

The only argument that the FaceTime video was not made for a criminal (or tortious) purpose was the claim made at trial that Johnson also wanted to sell the video to TMZ.[33] That said, the record does not support a conclusion that the sale to TMZ was the purpose or the primary purpose of the illegal interception.[34] Instead, the evidence demonstrates the hoped-for sale to TMZ was subsequent and aspirational and unconnected to the purpose of the interception.

c. Result.

Thus, the evidence demonstrates Johnson made the interception for a criminal or tortious purpose.[35]

## III. Conclusion.

Assuming the Court finds the government erred in relying on *Murdock*, then the Court should find the 18 U.S.C. § 2515 exception applies.

**Issue Two**:

### I. The district court's reliance on *Murdock* was harmful.

---

[33] Transcript, R.145, Page ID #1461.

[34] Transcript, R.145, Page ID #1456.

[35] 18 U.S.C. § 1951(b)(2); *see also* Tex. Penal Code Ann. § *31*.02; Tenn. Code Ann. § 39-14-112; Miss. Code Ann. § 97-3-82. Transcript, R. 145, Page ID#1253.

This Court reviews an error in admitting evidence for harmlessness.[36] Because Appellant claims non-constitutional error, the government must "show by a preponderance of the evidence" (and with "fair assurance") that the "statements did not substantially sway the jury's verdict" for this Court to disregard the error as harmless.[37]

Generally, when this Court has found harmless error on evidentiary issues, the disputed evidence was tangential[38]—here the evidence is fundamental.

## II. The government cannot show the error was harmless.

The government acknowledged the paramount role of the FaceTime video to the district court,[39] to the jury,[40] and to this Court.[41] Further, the district court's preliminary instructions emphasized the importance of the video.[42] The jury never got to review the remaining evidence without the filter of the FaceTime video.[43] But when the filter of the FaceTime video is lifted, the government cannot provide "fair assurance" that the FaceTime video did not "substantially sway" the jury because the video was always—according to the government—the most important evidence.

---

[36] *United States v. Young*, 847 F.3d 328, 349 (6th Cir. 2017) (citing FED. R. CRIM. P. 52(a)); *see also* FED. R. EVID. 103(a).
[37] *United States v. English*, 785 F.3d 1052, 1057 (6th Cir. 2015); *Young*, 847 F.3d at 349–50.
[38] *See United States v. Dotson*, No. 21-2826, 2022 WL 6973397, at *6 (6th Cir. Oct. 12, 2022).
[39] Transcript, R. 122, Page ID #551.
[40] Transcript, R. 147, Page ID #1826-1829.
[41] Government's brief, 42.
[42] Transcript, R. 144, Page ID ##1116-1117.
[43] Transcript, R. 147, Page ID #1826-1829.

During oral argument, this Court referred to the video as "really terrific evidence"[44] and the panel asked, "what's more valuable than a recording of the actual conversation that occurred?"[45]

Accordingly, the government cannot establish that the FaceTime video was harmless.

## III. The Supreme Court rejected the government's argument to deny certiorari on harmless-error grounds.

Although the government urged the Supreme Court to deny certiorari on harmless-error grounds, the full Court granted certiorari, vacated the judgment, and remanded.[46] Only Justice Alito wrote in support of the government's argument that the error was harmless.[47] The full Court's decision leaves the harmlessness determination to this Court. Under Sixth Circuit precedent, the government cannot meet its burden to show the error was harmless.[48]

## IV. The video was the most important evidence.

The government represented to the district court that the video was "the whole crime."[49] To emphasize this point, the government interrupted Johnson's testimony

---

[44] Oral argument recording 0:07:57-0:08:00.
[45] Oral argument recording 0:08:00-0:08:05.
[46] *Grayson v. United States*, 608 U.S.--, 146 S. Ct. 1872 (2026).
[47] *Id*.
[48] *Id*. (Alito, J. dissenting).
[49] Transcript, R. 122, Page ID #551, Transcript, R. 147, Page ID #1826-1829, government's brief, 42.

48 times to play clips of the short video.[50] The government's original brief argued to this Court that the video "was always going to be significant evidence in this trial…"[51] During closing arguments the government referred the jury to the video many times.[52] And during the preliminary instructions, the district court (who was aware of the video) emphasized the role of video evidence.[53]

These examples demonstrate the primacy of the FaceTime video. This primacy prevents the Court from having a "fair assurance" that the video did not "substantially sway" the jury. Accordingly, the government cannot establish that the FaceTime video was harmless.

## V. The remaining evidence prevents the government from showing the error was harmless.

### A. The FBI Recordings.

The government can point to the FBI call and cast it as independent proof of a murder-for-hire plot, but Appellant's call was an attempt to report extortion—not a confession to a murder-for-hire plot. Without the improperly admitted FaceTime video, a jury evaluating the FBI call would hear Appellant reporting extortion and venting frustration, rather than admitting she entered a criminal conspiracy. The government cannot "put the genie back in the bottle" and reasonably demonstrate

[50] Transcript, R. 145, generally.
[51] Government's brief, 42.
[52] Transcript, R. 147, Page ID #1827-28, 1829.
[53] Transcript, R. 144, Page ID ##1116-1117.

how the jury would have interpreted the FBI call without the filter of the video.

As the Solicitor General argued, "it is difficult to overstate the extent of animosity reflected" in the communications between Appellant and Harwell.[54] This assertion allows for two conclusions related to the FBI recording: 1) Appellant was "venting" about a person with whom she had enormous friction when she talked with the FBI and the tremendous friction explained Appellant's language; or, 2) Appellant wanted to hire Johnson to commit a murder.

It was through the filter of the FaceTime video that the jury received and interpreted the FBI recording. Without the video, the conclusion that the FBI recording was independent evidence of a murder-for-hire plot is not supported by the record.

**B. Payments.**

Other evidence established that Appellant funded Johnson's and Thomas's to travel to Dallas, and her husband gave them $10,000.

Importantly, the jury acquitted Appellant's husband (who surrendered $10,000) and that is evidence the jury did not believe the money (either for the travel or handed over in Dallas) was for a murder-for-hire plot.

For the Solicitor General, the acquittal meant little.[55] But that argument

---

[54] S.G., brief, 8.
[55] S.G. brief, 16.

addressed harmlessness generally and not the money Appellant's husband supposedly handed to Thomas.[56] In the context of the payments, the fact the jury saw a video of Appellant's husband handing Thomas money and acquitted him is evidence the jury did not believe the money was for a murder-for-hire plot.

Without the taint of the FaceTime video and with the acquittal of Appellant's husband, this evidence does not carry the government's burden.

**C. Johnson's and Thomas's testimony.**

Johnson and Thomas testified, and Johnson did so by being shown segments of the FaceTime video and then explaining or reiterating the content.[57]

During Johnson's direct examination, the government framed its questions by playing a clip of the short video and then asking Johnson to explain what the clip showed; the government did this 48 times. Thus, Johnson's entire testimony was directed by the wrongly admitted video.[58]

The government did not use the video to lead Thomas's testimony. But Thomas's testimony was far shorter, far less consequential, and delivered when he was a convicted felon.[59] Thus, this testimony cannot establish that the error was harmless.

---

[56] S.G. brief, 16.
[57] Transcript, R. 145, Page ID #1266.
[58] Transcript, R. 145, generally.
[59] Transcript, R. 145, Page ID #1500-1537.

**D. Text messages between Appellant and Johnson.**

Without the FaceTime video, the text message evidence is not evidence of guilt.[60] Once the filter of the video is removed, what remains of the text messages is not independent proof of guilt because the text messages are not independently incriminating. Instead, the text messages generally concern routine matters, such as travel for a hair appointment and a general "business plan."

**E. Argument**

The government will try to satisfy its burden to show harmlessness by pointing to evidence that is, in substance, downstream of the error, but this does not lift the taint of the video.

This Court has explained, "an error is harmless 'unless it is more probable than not that the error materially affected the verdict.'"[61] Here, the government cannot demonstrate the erroneously admitted video did not materially affect the verdict. The evidence from the FaceTime video (as the government acknowledged to the district court, the jury, and this Court) was "the whole crime."[62] The government structured the trial so the video served as a filter through which the jury interpreted all other evidence. The government's acknowledgment of the primacy of the video (a fact recognized by the panel during oral argument) undermines any

[60] Space constraints require Appellant to address these generally.
[61] *United States v. Grogan*, 127 F.4th 642, 653 (6th Cir. 2025).
[62] Transcript, R. 122, Page ID #551.

argument that the error did not materially affect the verdict.

The government will make general claims that the evidence was "overwhelming" and that this generalized claim refutes a finding of harm. Such an approach is simplistic and fails to acknowledge the primary role of the FaceTime video. As the government acknowledged, the FaceTime video was "the whole crime" and the jury's review of all other evidence was colored by exposure to this erroneously admitted evidence.

## CONCLUSION

For the reasons stated in this brief, Appellant asks for all available relief and specifically asks this Court to vacate the judgment and order a new trial.

Respectfully submitted,

**NILES S. ILLICH**
***/S/ NILES ILLICH***
**ILLICH & SHIN, PLLC**
8330 Lyndon B. Johnson Freeway
Suite 755
Dallas, Texas 75243
Direct: 469.886.1564
Email: Niles@appealstx.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2026, that an exact copy of this Supplemental Brief was served via ECF to: Patrick Neal Oldham and Bryce Phillips.

*/s/Niles Illich*
**NILES ILLICH**
**ILLICH & SHIN, PLLC**